IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| American Electric Motor Services, Inc., on behalf of itself and all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> Blue Cross and Blue Shield of Alabama, and Blue Cross and Blue Shield Association, <br><br> Defendants. | CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff American Electric Motor Services, Inc., individually and on behalf of a class of all those similarly situated, brings this action for treble damages under the antitrust laws of the United States against Defendants Blue Cross and Blue Shield of Alabama ("BCBS-AL") and Blue Cross and Blue Shield Association ("BCBSA"), and demand a trial by jury.

### NATURE OF THE CASE

1. Plaintiff brings this action on behalf of all individuals and entities in the state of Alabama that purchased individual or small group health insurance from BCBS-AL from April 17, 2008 through the present (the "Class Period") to recover the overcharges they paid for BCBS-AL's health insurance plans in the state of Alabama.

2. Defendants and the 37 other member companies of BCBSA have conspired to divide and allocate separate markets for commercial health insurance. In particular, Defendants and the 37 other BCBSA member companies agreed that none of the other BCBSA member

1

companies would compete with BCBS-AL in the commercial health insurance market in the state of Alabama.

3.     BCBS-AL has dominated the Alabama market for years and has faced minimal competition in the sale of commercial health insurance in Alabama, for at least the past four years. It currently has a 90% market share, while the next-largest insurer has only a 5% share of the market.

4.     Absent the alleged conspiracy, BCBS-AL would have faced competition in this market from other BCBSA member companies. Faced with substantial increase in competition, BCBS-AL would have responded by lowering its prices through lower premiums for at least its individual and small group insurance plans.

## JURISDICTION AND VENUE

5.     This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

7.     Venue is proper in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C. § 1391.

## PARTIES

**Plaintiff**

8.     Plaintiff American Electric Motor Services, Inc. is an Alabama corporation with its principal place of business located at 2012 1st Avenue North, Irondale, Alabama 35210.

American Electric Motor Services has four (4) employees for whom it purchased a small group health insurance plan from BCBS-AL during the Class Period.

**Defendants**

9.     Defendant BCBSA is a corporation with its principal place of business in Chicago, Illinois, and is organized under the laws of the state of Illinois.  BCBSA is owned and controlled by its 38 member companies, which operate under the Blue Cross and Blue Shield trademarks and trade names.  These companies created BCBSA to hold and manage the Blue Cross and Blue Shield trademarks and trade names.  BCBSA operates as a licensor for its member companies, and, in turn, the member companies help fund BCBSA by paying dues.  BCBSA is governed by a board of directors composed of the chief executive officers from most member companies.  Approximately 100 million Americans across all 50 states are covered by health insurance plans licensed by BCBSA.

10.     Defendant BCBS-AL is a health insurance provider located in Birmingham, Alabama.  BCBS-AL was founded in 1936, and currently administers health and dental programs for over three million individuals.  BCBS-AL is the largest provider of healthcare benefits in Alabama by a large margin.  BCBS-AL licenses the Blue Cross and Blue Shield trademarks and trade names from BCBSA and is a member of BCBSA.

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons or entities who, at any time from April 17, 2008 to the present, paid health insurance premiums directly to BCBS-AL for commercial individual or small group full-service health insurance. Excluded from the class are Defendants and their respective parent

companies, subsidiaries, affiliates, officers and directors, government entities, the attorneys representing parties in this action, and all court personnel involved with this action.

12. Due to the nature of the trade and commerce involved, Plaintiff believes that there are thousands, if not millions, of Class members as described above. Plaintiff does not know the exact number of class members or their identities because Defendants exclusively control that information.

13. The Class is so numerous and geographically dispersed that joinder of all members is impracticable.

14. There are numerous questions of law and fact common to the class, including *inter alia*:

- whether the 38 member companies of BCBSA agreed to allocate or divide commercial health insurance markets or customers amongst themselves;

- whether the restrictions contained in BCBSA's license agreement amount to a *per se* violation of Section 1 of the Sherman Act;

- whether BCBSA coordinated a conspiracy among its 38 members to allocate health insurance markets;

- whether BCBS-AL entered into illegal agreements with BCBSA and the other 37 member companies of BCBSA to allocate health insurance markets;

- whether the premiums charged by BCBS-AL for commercial individual and small group health insurance were artificially inflated as a result of the alleged conspiracy; and

- the appropriate class-wide measure of damages

15. Plaintiff is a member of the Class, and Plaintiff's claims are typical of the claims of the other Class members. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a direct purchaser of commercial health insurance, and its interests are coincident with, and not antagonistic to, those of the other members of the Class.

16. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

17. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

18. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

19. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy. The Class is ascertainable, and records should exist from which Class members can be identified. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. This class action presents no difficulties in management that would preclude its maintenance as a class action.

## TRADE AND COMMERCE

20. The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

21.     BCBSA is a nationwide trade organization.  The 38 member companies of BCBSA collectively provide health insurance to 99 million members across all 50 states, the District of Columbia, and Puerto Rico. BCBSA enters into agreements with its 38 member companies, including BCBS-AL, throughout the United States.  These agreements are the means by which the market allocation challenged in this case was established and continues.  BCBS-AL provides health coverage to more than three million people throughout the state of Alabama and around the country.  BCBS-AL purchases health care for its members in the state of Alabama and also throughout the United States when its members travel outside of their home states.  Accordingly, BCBS-AL and BCBSA are engaged in interstate commerce, and their conduct alleged herein has had a significant impact on interstate commerce.

22.     The illegal agreements into which Defendants entered have had a direct, substantial, and reasonably foreseeable effect on commerce between the states.

### BCBS-AL AND BCBSA TODAY

23.     BCBS-AL is a member of BCBSA, a trade association for Blue Cross and Blue Shield health insurance plans which holds the Blue Cross and Blue Shield trademarks and trade names.  Through license agreements coordinated by BCBSA, BCBS-AL and the 37 other members of BCBSA agreed to illegally allocate markets and refrain from competing with one another in violation of Section 1 of the Sherman Act.

24.     BCBSA licenses BCBS-AL to use the Blue Cross and Blue Shield trademarks and trade names in the state of Alabama.  By agreement among the 38 BCBSA member companies, no other member is allowed to use the Blue Cross or Blue Shield trademarks or trade names in Alabama.  BCBSA and its member companies agreed to similar exclusive licenses of the Blue

Cross and Blue Shield trademarks and trade names in other states and geographic regions throughout the United States.

25.     BCBS-AL is by far the largest provider of health insurance in Alabama. Among providers of commercial HMO and PPO insurance in Alabama, BCBS-AL enjoys a 90% market share. United Healthcare is the largest single health insurance provider in the United States. In Alabama, it owns the next-largest share of the market at only 5%.

26.     BCBS-AL's near-complete dominance of the commercial health insurance market in Alabama allows it to set prices for its individual and small group commercial health insurance policies at supra-competitive prices.

## HISTORY OF BCBSA

27.     The first Blue Cross plan was established in 1934, when an executive with the forerunner to Blue Cross and Blue Shield of Minnesota identified his hospital care program with a solid blue Greek cross design. Other hospital plans around the country began to use the same blue cross symbol. At the outset, the various plans using the blue cross symbol were not affiliated with one another, but were emerging and independent hospital care plans.

28.     In 1939, the blue shield symbol was devised by a medical service plan. The blue shield symbol was devised to indicate that the medical services plans were distinct from the hospital plans using the blue cross logo. The similarity of the symbols was meant to indicate that the two types of plans were companions, intended to offer complementary coverage.

29.     The Blue Cross Commission, a predecessor to BCBSA, was created in the 1940s. The Blue Cross Commission was a national organization of Blue Cross companies. A few years later, a national organization for Blue Shield companies, Associated Medical Care Plans, was created. In the early 1960s, Associated Medical Care Plans changed its name to Association of

Blue Shield Plans. In the 1970s, the Association of Blue Shield Plans changed its name again, becoming the Blue Shield Association.

30. The Blue Shield Association and the Blue Cross Commission merged in the early 1980s to become BCBSA.

31. By the 1990s, Blue Cross and Blue Shield plans had 37.5 million enrollees. By 2003, that number had climbed to more than 88 million. By 2009, it reached 100 million.

32. In 1994, BCBSA abandoned its longstanding rule that Blue Cross and Blue Shield companies must be not-for-profit entities. This rule change led to Blue Cross and Blue Shield member companies across the country converting to for-profit status.

33. Over the years since the formation of the Blue Cross and Blue Shield associations, various Blue Cross and Blue Shield member companies merged, with the result that by 2011, only 38 local Blue Cross and Blue Shield companies remained.

## BCBSA LICENSE AGREEMENT

34. BCBSA controls the Blue Cross and Blue Shield trademarks and trade names.

35. A BCBSA member company may only legally operate under the Blue Cross or Blue Shield trademark or trade name if it first obtains a license from BCBSA.

36. In prior litigation, BCBSA has taken the position that it has no legal identity outside of its members.

37. A BCBSA member company may only obtain a license from BCBSA to use the Blue Cross or Blue Shield trademarks and trade names by entering into a licensing agreement with BCBSA ("BCBSA License Agreement"). Each of the BCBSA member companies has entered into a BCBSA License Agreement, and by agreement of the member companies, each of those BCBSA License Agreements is substantially the same.

38.     The BCBSA License Agreement grants a member company the right to use the Blue Cross and Blue Shield trademarks and trade names within that company's designated service area only, defined as the geographical area(s) served by the member company on June 30, 1972.  A few member companies have been granted a subsequent license.  In effect, the BCBSA License Agreement fixes the service area of each member company to the area served by that company on June 30, 1972.  Mandatory guidelines imposed by BCBSA on its member companies further limit the companies' ability to compete outside of their respective service areas.

39.     According to the Government Accountability Office:  "The [BCBSA] license agreement restricts [member companies] from using the trademark outside their prescribed service area to prevent competition among [member companies] using the Blue Cross and Blue Shield names and trademarks."

40.     In prior litigation, BCBSA has admitted the existence of territorial allocation agreements between and among its member companies, and at least one court has taken notice that the pattern has existed for many years.

41.     The BCBSA License Agreement is a naked horizontal territorial allocation by and among BCBSA and the member companies.

42.     In prior litigation, BCBSA has taken the position that its territorial allocation agreements have an impact on insurance rates.

43.     These explicit, horizontal agreements to divide various geographic health insurance markets within the United States, including the agreement to exclusively license the Blue Cross and Blue Shield trademarks and trade names in Alabama to BCBS-AL have reduced competition.  This reduced competition has resulted in fewer health insurance choices for

Alabama residents and increased prices charged to members of BCBS-AL's individual and small group commercial health insurance plans.

44. The reduced competition and increased prices, including inflated premiums, would not be possible without Defendants' illegal agreements to eliminate competition and divide markets. But for those agreements, other BCBSA member companies would compete with BCBS-AL in Alabama, resulting in increased choice for Alabama residents and decreased health insurance prices.

45. But for the illegal market allocation agreements entered into by BCBSA, BCBS-AL, and the 37 other BCBSA licensees, there would be more competition for health insurance in Alabama and lower prices.

## VIOLATIONS ALLEGED

### COUNT 1

### CONTRACT, COMBINATION, OR CONSPIRACY IN RESTRAINT OF TRADE IN VIOLATION OF SHERMAN ACT, SECTION 1

46. Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

47. Throughout the Class Period, Defendants, by and through their officers, directors, employees, agents, or other representatives, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, had an agreement, understanding, and conspiracy in restraint of trade to allocate markets, reduce competition, restrict output, and increase prices for commercial individual and small group health insurance sold in Alabama.

48. Plaintiff and the other members of the Class have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiff and the other Class members have paid higher prices for commercial

individual and small group health insurance than they otherwise would have paid in the absence of Defendants' conduct. This injury is the type of injury the federal antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

49. Accordingly, Plaintiff and the Class members seek damages, to be trebled pursuant to federal antitrust law, and costs of suit, including reasonable attorneys' fees.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court:

a) Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b) Adjudge and decree that BCBSA and BCBS-AL have violated Section 1 of the Sherman Act;

c) Award Plaintiff and the Class damages three times the amount by which premiums charged by BCBS-AL have been artificially inflated above their competitive levels since April 17, 2008;

d) Award costs including reasonable attorneys' fees to Plaintiff;

e) Hold a trial by jury; and

f) Award any such other and further relief as may be just and proper.


Dated: June 14, 2012                    Respectfully submitted,

                                        /s/ Charles M. Thompson
                                        Charles M. Thompson, Esq.
                                        1401 Doug Baker Blvd., Ste. 107-121
                                        Birmingham, AL  35242
                                        Tel:  (205) 995-0068
                                        Fax:  (205) 995-0078
                                        CMTLAW@aol.com

Daniel E. Gustafson
Daniel C. Hedlund
Ellen M. Ahrens
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel:  (612) 333-8844
Fax:  (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
eahrens@gustafsongluek.com


Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
Tel:  (717) 892-3000
Fax: (717) 892-1200
dnast@rodanast.com

*Attorneys for Plaintiff*